# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

_____

m 00-40966

_____

STEVEN R. HOLTZCLAW,

Plaintiff-Appellant,

VERSUS

DSC COMMUNICATIONS CORPORATION,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Eastern District of Texas

_____

July 6, 2001

Before SMITH, DUHÉ, and WIENER,
   Circuit Judges.

JERRY E. SMITH, Circuit Judge:

   Steven Holtzclaw appeals a summary judgment in his suit against DSC Communications Corporation ("DSC") asserting claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(a), the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1140, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(d). Because Holtzclaw is not physically able to do the job that he sought, either with or without accommodation, he fails to establish a _prima facie_ case for any of his claims; accordingly, we affirm.

## I.

Holtzclaw began working for DSC in 1984. Ten years later, he was hospitalized for chronic idiopathic pancreatitis but returned to work soon after his hospitalization. In April 1995, the severity of his pancreatitis forced him to take short-term disability leave. In December 1995, DSC's long-term disability ("LTD") carrier determined that Holtzclaw qualified for LTD benefits, based on his unequivocal statements that he was "unable to work at all," that he would never be able to return to work, and that his condition could not reasonably be accommodated by an employer. After making similar unequivocal statements to the Social Security Administration ("SSA"), Holtzclaw secured social security disability insurance.

In August 1996, Holtzclaw reapplied for a job at DSC. In September, the director of human resources informed him that DSC would not hire him because of low ratings on several 1993 and 1994 performance reviews. In October, Holtzclaw verified to DSC's LTD insurer that he had been completely and continuously unable to work for the previous twenty-four months, a period that included the time during which he was re-applying for a job at DSC.

In May 1997, Holtzclaw filed this suit, claiming that DSC had discriminated against him under the ADA, had interfered with his receipt of benefits under ERISA, and had retaliated against him under the ADEA. DSC moved for summary judgment on all of the claims, and Holtzclaw responded with a cross-motion for summary judgment on the ADA and ERISA discrimination claims. The court granted DSC's motion for summary judgment and denied Holtzclaw's.

While Holtzclaw's appeal was pending, the Supreme Court decided *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795 (1999), which rejected this circuit's application of judicial estoppel to an ADA accommodation case in which a plaintiff previously had claimed full disability. We therefore remanded Holtzclaw's case to the district court with instructions to reconsider his claims in light of *Cleveland.* On remand, the district court again granted summary judgment for DSC.

## II.

We review a summary judgment *de novo*, applying the same standard as did the district court. *D.E.W., Inc. v. Local 93, Laborers' Int'l Union*, 957 F.2d 196 (5th Cir. 1992). Summary judgment is appropriate only where there is no genuine issue of material fact. FED. R. CIV. P. 56(c). If the evidence is such that a reasonable jury could return a verdict for the non-moving party, there is a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Therefore, if the nonmovant fails to establish facts in support of an essential element of his *prima facie* claim, summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). We may affirm a summary judgment on any ground supported by the record, even if it is different from that relied on by the district court. *Tex. Refrig. Supply, Inc. v. FDIC*, 953 F.2d 975, 980 (5th Cir. 1992).

## III.

To present a *prima facie* case of discrimination under the ADA, Holtzclaw must show that "[he] is a qualified individual with a disability, and that the negative employment action occurred because of the disability." *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1119 (5th Cir. 1998). A "qualified individual with a disability" is defined in the ADA as someone

who has a disability but who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); *accord Giles v. Gen. Elec. Co.*, 245 F.3d 474, 483 (5th Cir. 2001).

The summary judgment evidence indicated that Holtzclaw could not perform the essential functions of the position he sought. In statements to DSC's LTD insurer and to the SSA, Holtzclaw asserted the seriousness and long-term effects of his pancreatitis. He certified to the SSA that his conditions and medications "play havoc on [his] thinking and memory skills," "make it impossible to have a clear and normal mind," and "keep [him] from being able to think and concentrate." Holtzclaw also told the SSA that his "mental and physical abilities ha[d] decreased to a level where [he is] no longer self-supportive" and that he is simply "unable to function in the real world" from two to three days per week.

Furthermore, Holtzclaw related to DSC's LTD insurer that returning to work or commencing vocational rehabilitation was "not possible," that he could perform none of the duties of his former occupation, that it was "not possible to work" even with any form of accommodation, that he was "too sick" to consider any form of retraining, that he was "unable to work at all," and that he was "doing good [sic] to be alive." Holtzclaw also certified to the LTD insurer that he never expects to return to work and that his "illness is chronic and will never go away."

Even after he reapplied to DSC, stating that he was capable of performing all essential functions of the job, Holtzclaw nevertheless told DSC's LTD insurer that he was "totally disabled" from performing his own or any oth-er job and indicated that neither rehabilitation services, job modification, nor vocational retraining would allow him to return to work. This reaffirmation of his disability for purposes of receiving LTD benefits included a verification that he had been continuously incapacitated from June 1996 through September 1996SSthe time period during which he reapplied for a job at DSC.

An ADA plaintiff who, in an application for disability benefits, asserts that he is unable to work must produce "an explanation of this apparent inconsistency" that is "sufficient" to defeat summary judgment on the issue of whether the plaintiff is a qualified individual with a disability. *Cleveland*, 526 U.S. at 807. Holtzclaw offers no explanation for the inconsistency between his sworn testimony in applying for LTD and SSA and his claim to DSC that he is a qualified individual with a disability who can perform the essential functions of the job. In fact, the only evidence he uses to support his contention that he was able to return to work is his belief that he was "physically able to return to work as of August 1996." In *Cleveland*, however, the Court held that a plaintiff "cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement." *Id.* at 806.

In an effort to prove his status as a qualified individual with a disability, Holtzclaw presented a medical release form signed by his doctor that states merely that he is able to return to work. The letter was based solely on Holtzclaw's assertion that he felt well enough to return to work: The doctor conducted no evaluation before writing the letter. The release thus is not probative evidence of Holtzclaw's ability to work.

Holtzclaw claims, too, that because none of his interviewers at DSC expressed a belief that he was too disabled to do the job, a reasonable jury could find him physically able to do it. This argument is without merit, because the purpose of the job interviews was to explore Holtzclaw's technical skills and experience, not to determine whether he was medically able to meet the demands of day-to-day employment.

*Cleveland* teaches that a plaintiff cannot change his story during litigation without a sufficient explanation for his inconsistent assertions. Holtzclaw has offered no sufficient explanation for the contradiction between his disability applications and his claim that, when he re-applied for the job, he could have worked even without reasonable accommodation. He therefore has failed to create a material issue of fact whether he is qualified for the position he sought. Because he cannot establish that element of his *prima facie* claim, summary judgment was appropriate on the ADA claim.[1]

------

[1] Holtzclaw also claims that DSC's rehiring policy is facially discriminatory under the ADA. The policy states in pertinent part:

> If an employee is released to return to work from a period of LTD incapacity, within six (6) months of termination from the company for inability to work due to total disability, the employee may apply for a position with the company. If a position is available and the employee is returned to work within this six (6) month period, all benefits will be restored to the employee, and the employee's service credit will continue as if there was no break in service.

Holtzclaw's reading of the policy assumes that if a

## IV.

To establish a *prima facie* retaliation claim under the ADEA, Holtzclaw must show (1) that he engaged in a protected activity, (2) that there was an adverse employment action, and (3) that a causal link existed between the protected activity and the adverse employment action. *Sherrod,* 132 F.3d at 1112 n.8. Holtzclaw argues that his claim should have survived summary judgment, even though he cannot perform the job at DSC, because qualification for the job is not a *prima facie* element of an ADEA retaliation claim. Instead, he urges that if the employer acted for a discriminatory reason, then even if he was not qualified for the job, he should still recover on his ADEA retaliation claim.

------

former employee, such as Holtzclaw, has been on LTD for more than six months, he is not allowed to reapply for a position at DSC.

The above-quoted provision merely distinguishes between (1) employees who are rehired within six months of being released to return to work from LTD status and (2) those who are so released but are not rehired within six months. Nothing in the provision prohibits an employee who is released to return to work, or who is re-hired, more than six months after his original termination for LTD from re-applying for employment or from being rehired; the distinction is that such employee is treated as a new hire for purposes of employee benefits.

Holtzclaw's argument also is unsupported by the record, in light of the fact that he was invited to reapply for a position, was interviewed, and was considered for re-employment nine months after he went on LTD. Because of this fact and of the fact that he did not meet the requirements to be a "qualified individual" under the ADA, his argument has no merit.

4

We have never expressly made qualification a *prima facie* element of an ADEA retaliation claim, but today we decide that such an element is necessary. Retaliation claims are nothing more than a protection against discrimination in that the employee against whom the employer has retaliated suffers discrimination based on the employee's exercise of a right to charge, testify, assist, or participate in a protected activity under the ADEA. *See* 29 U.S.C. § 623(d).

Because, in regard to other types of discrimination claims, including other ADEA claims, we consistently have required that a plaintiff be qualified for the job he seeks,[2] it would be illogical not to require one here. A contrary holding would be inconsistent with the observation that "'Congress did not intend . . . to guarantee a job to a person regardless of qualifications. In short, [title VII] does not command that any person be hired simply because he was formerly the subject of discrimination.'" *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800(1973). As the district court noted:

> [T]o analyze this issue in any other manner would lead to illogical and inconsistent results. For example: a plaintiff's discrimination suit could be dismissed because he was unqualified for the position applied for, even though there was some direct evidence of age discrimination on the part of the employer. However, under the same facts, the plaintiff could survive summary judgment if his complaint were that he was discriminated against because he complained of age discrimination. This is much like our present case where Plaintiff will have his ADA and ERISA claims dismissed because he is, as a matter of law, not qualified for the position applied for, yet has the possibility of surviving summary judgment on his ADEA retaliation claim based on his being refused the same job the Court has found he is not qualified to hold. This is illogical, and cuts against the intent of these statutes.

We therefore conclude that qualification for the job is an element of a *prima facie* claim of ADEA retaliation. Accordingly, summary judgment is proper on Holtzclaw's claim of ADEA retaliation.

V.

To establish a *prima facie* case of discrimination under ERISA, a plaintiff must establish that his employer fired him in retaliation for exercising an ERISA right or to prevent attainment of benefits to which he would have become entitled under an employee benefit plan. *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 761 (5th Cir. 1996); *Hines v. Mass. Mut. Life Ins. Co.*, 43 F.3d 207, 209 (5th Cir. 1995). The plaintiff need not prove that the discriminatory reason was the only reason for discharge, but he must show that the loss of benefits was more than an incidental loss from his discharge. *Stafford v. True Temper Sports*, 123 F.3d 291, 295 (5th Cir. 1997) (per curiam). This inference of discrimination can be proven by circumstantial evidence. *Id.*

Although we have not so held, district

---

[2] *See, e.g., Price v. Marathon Cheese Corp.*, 119 F.3d 330, 336 (5th Cir. 1997) (holding that a plaintiff must be qualified for the job in question to establish a *prima facie* case of discrimination under the ADEA.

5

courts in this circuit have required a plaintiff, to succeed on an ERISA claim, to show that he is qualified for the position he seeks. *See, e.g., Smith v. Gencorp, Inc.*, 971 F. Supp. 1071, 1075 (N.D. Miss. 1997). So, too, a majority of the circuits have determined that qualification for the job is an element of a *prima facie* ERISA claim.[3]

We now join our sister circuits in deciding that qualification for the position sought is an element of a *prima facie* ERISA claim. This reinforces our caselaw under title VII and the ADA, neither of which statutes contains qualification as an element, but for both of which our jurisprudence requires a showing of qualification as part of a *prima facie* case.[4]

As we have discussed *supra*, it is illogical to allow one alleging discrimination under any employment discrimination statute to proceed with his suit if he is not qualified for the job he seeks. Failing to require job qualification as an element of the *prima facie* case would belie the purpose of such statutes: to allow those who are qualified for jobs to seek remedies for prohibited acts of discrimination. Employment discrimination statutes do not prohibit discrimination in a vacuum, but only in the concrete context of a specific job or job category.[5]

Because Holtzclaw has not shown that he is qualified for the position he seeks, either with or without accommodation, he can pursue his ERISA claim no further. Holtzclaw argues that being "qualified with a disability" under the ADA is different from being "qualified" under ERISA and that because he has the expertise necessary to perform the job, he is "qualified" for purposes of an ERISA claim. This argument is meritless: Holtzclaw has stated plainly that, because of his condition, he cannot do the job, even with accommodation. Because of this, no employer would consider him "qualified," and neither can we. Thus, summary judgment was proper on the ERISA claim.

AFFIRMED.

---

[3] *See, e.g.*, *Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1223 (11th Cir. 1993); *Henson v. Liggett Group, Inc.*, 61 F.3d 270, 277 (4th Cir. 1995); *Lehman v. Prudential Ins. Co. of Am.*, 74 F.3d 323, 330 (1st Cir. 1996); *McNemar v. Disney Store, Inc.*, 91 F.3d 610, 621 (3d Cir. 1996); *Salus v. GTE Directories Serv. Corp.*, 104 F.3d 131, 135 (7th Cir. 1997); *Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1114-15 (2d Cir. 1998).

[4] *See, e.g.*, *Urbano v. Cont'l Airlines, Inc.*, 138 F.3d 204, 206 (5th Cir. 1998) (title VII); *Hamilton v. Southwestern Bell Tel. Co.*, 136 F.3d 1047, 1050 (5th Cir. 1998) (ADA).

[5] *Cf. Palsgraf v. Long Island R.R.*, 162 N.E. 99, 99 (N.Y. 1928) ("'Proof of negligence in the air, so to speak, will not do.'") (citation omitted).