**Michael P. FLOOD, Plaintiff,**

v.

**SHELL SERVICES INTERNATIONAL, INC., Defendant.**

**No. CIV.A. H–02–3397.**

United States District Court, S.D. Texas, Houston Division.

Oct. 20, 2003.

Ellen Sprovach, Gregg M. Rosenberg & Asoc, Houston, TX, for Michael P. Flood, plaintiff.

L. Christopher Butler, Attorney at Law, Houston, TX, for Shell Services International Inc., defendant.

## MEMORANDUM AND ORDER

BOTLEY, United States Magistrate Judge.

Defendant Shell Services International, Inc. ("Shell") moves, pursuant to Rule 56(c), Fed.R.Civ.P., for summary dismissal of Plaintiff Michael P. Flood's ("Flood") lawsuit, in which Flood alleges that despite his physical disability, Shell terminated his employment in retaliation for seeking to exercise his medical and family leave benefits and, thereby, violated section 510 of the Employee Retirement Income Security Act (ERISA) of 1974, 29 U.S.C. § 1001, *et seq.*, and the Family Medical Leave Act (FMLA), 29 U.S.C. § 2601, *et seq. See* Defendant's Motion for Summary Judgment (Entry # 18); Memorandum and Documents in Support of Motion for Summary Judgment (Entry # 19); and, Reply to Plaintiff's Response to Motion for Summary Judgment (Entry # 22).[1] Shell maintains that Flood's claims were previously litigated and are, accordingly, barred by the principle of *res judicata* and that Flood has failed to make a *prima facie* showing that Flood was discriminated or retaliated against for exercising rights protected by the FMLA or ERISA. *See id.*

Flood contends that summary judgment would be improper because Shell's attempts to articulate legitimate, non-discriminatory and non-retaliatory reasons for terminating his employment are a mere pretext for its actual discriminatory or retaliatory motives and, accordingly, requests that Defendant's Motion for Summary Judgment (Entry # 18) be denied. *See* Plaintiff's Response to Motion for Summary Judgment (Entry # 21).

## BACKGROUND

In October of 1997, Flood began working for Shell as an engagement manager with Shell's Contract Group in Houston, Texas.[2] Generally, Flood was to provide

---

1. Defendant's Motion for Summary Judgment (Entry # 18) and Memorandum and Documents in Support of Motion of Summary Judgment (Entry # 19) will henceforth be referred to as the single instrument, Defendant's Motion for Summary Judgment (Entry # 18), unless otherwise indicated.

2. It appears Flood was not a licensed attorney but earned a *juris doctorate* degree. *See* Kramm deposition at p. 23, Exhibit 2, attached to Defendant's Motion for Summary Judgment (Entry # 18).

support and assistance in pursuing and creating proposals leading to agreements for the sale of information technology to Shell's commercial customers. *See* Flood's deposition at p. 7, Exhibit 1; Tim Dooley deposition at p. 32, Exhibit 3; and, Deb Kramm deposition at pp. 7–8, 21, Exhibit 2, attached to Defendant's Motion for Summary Judgment (Entry # 18).

Due to his personal health, Flood was seeing various physicians throughout 2000, including Shell's corporate physicians, for pulmonary and respiratory ailments, allergies and endocrinology problems. *See* Flood deposition at pp. 36–38. Deidra Smith ("Smith"), a consultant with Shell's Human Resources Dept., Tim Dooley ("Dooley"), Flood's immediate supervisor, and Deb Kramm ("Kramm"), Dooley's supervisor and head of Shell's Contract Center division in Houston, were all aware that Flood was experiencing health problems, was seeing physicians because of his physical condition and that he utilized his Shell sponsored health benefits to secure medical treatment for his ailments. *See* Flood's deposition at pp. 36–38, Exhibit 1; Deidra Smith deposition at p. 25, Exhibit 4; Deb Kramm deposition at pp. 47–48, 87, Exhibit 2, attached to Defendant's Motion for Summary Judgment (Entry # 18). See also Exhibits 2, 3, 6 and 8, attached to Plaintiff's Response to Defendant's Motion for Summary Judgment (Entry # 21).

During the summer of 2000, at the request of Alastair Rae ("Rae"), a manager with Shell in London, England, Flood was assigned to work on a global infrastructure telecommunications project in Europe for Shell's Procurement Division. *See* Kramm deposition at p. 41, Exhibit 2; Smith deposition at pp. 8–9 at Exhibit 4, attached to Defendant's Motion for Summary Judgment (Entry # 18). On August 28, 2000, following Flood's return from Europe, Dooley, a Contract Center manager, gave Flood an oral warning for, among other things, failing to timely provide written reports of his activities in Europe. *See* Flood deposition at p. 12, Exhibit A, attached to Plaintiff's Response to Motion for Summary Judgment (Entry # 21); Dooley deposition at pp. 62–65, Exhibit 3, attached to Defendant's Motion for Summary Judgment (Entry # 18).

On August 31, 2000, Flood went to Florida to visit his mother who was ill with chronic diabetes and returned to work on September 5, 2000. *See* Flood deposition at p. 17, Exhibit 1, attached to Defendant's Motion for Summary Judgment (Entry # 18). Nine days thereafter, on September 14, 2000, Flood electronically mailed ("e-mail") Smith requesting the company's guidelines allowing him to take a leave of absence to attend to a family member. That same day, Smith provided Flood the guidelines, however, Flood never submitted a request for the leave of absence. *See* Flood deposition at pp. 17, 23–24, Exhibit A and Exhibit 4, p. 1, attached to Plaintiff's Response to Motion for Summary Judgment (Entry # 21); Smith deposition at pp. 24–25, 35, Exhibit 4, attached to Defendant's Motion for Summary Judgment (Entry # 18).

After Flood advised Kramm that he was required to return to Europe to further assist that Shell division, Kramm contacted Mark Pynum ("Pynum"), a financial officer with Shell's European division, to assess the division's need for Flood's skills in light of her concern with Flood's health. *See* Kramm deposition at pp. 47–48, 87, Exhibit 2, attached to Defendant's Motion for Summary Judgment (Entry # 18). Pynum advised Kramm that he was not expecting nor did he need Flood's services. *Id.* at pp. 38–39, 65. Shortly thereafter, Alastair Rae advised Kramm that he had already sent Flood an e-mail indicating that Flood would not be needed in Europe. *Id.* at p. 43. *See also* Alastair Rae deposi-

tion at pp. 25–26, Exhibit C, attached to Plaintiff's Response to Defendant's Motion for Summary Judgment (Entry # 21).

On September 18, 2000, Kramm advised Flood that he was not going to Europe and that he was suspended pending an investigation of his plan to return to Europe. *Id.* at pp. 62, 87; Smith deposition at p. 27, Exhibit 4, attached to Defendant's Motion for Summary Judgment (Entry # 18). Flood told Kramm that he was unaware the trip to Europe had been previously cancelled and that he believed the trip was terminated solely because of his medical condition. *See* Flood deposition at p. 12, Exhibit 1, attached to Defendant's Motion for Summary Judgment (Entry # 18). On September 25, 2000, however, Flood's employment with Shell was terminated on the recommendation of Dooley and the concurrence of Kramm, for falsifying the reason required for his return to Europe. *See* Dooley deposition at p. 98, Exhibit 3; Kramm deposition at pp. 11, 55, 85, Exhibit 2, attached to Defendant's Motion for Summary Judgment (Entry # 18).

Flood filed a lawsuit in state court on March 2, 2001, seeking recompense for Shell's alleged tortious interference with employment relationship, defamation, intentional infliction of emotional distress, and breach of good faith and fair dealing.[3] *See* Plaintiff's Original Petition, Exhibit 5, attached to Defendant's Motion for Summary Judgment (Entry # 18). In that litigation, Flood asserted that he was alleging no "federal causes of action." *Id.* at p. 6. Flood's Fourth Amended Original Petition alleged that Shell violated the Texas Commission on Human Rights Act and the Texas Labor Code for intentional infliction of emotional distress, negligent supervision/hiring, negligent retention, gender and disability (or perceived disability) discrimination, and retaliation. *See* Plaintiff's Fourth Amended Original Petition, Exhibit 6, attached to Defendant's Motion for Summary Judgment (Entry # 18).

Flood filed his federal lawsuit on September 4, 2002, contending that Shell wrongfully discriminated and retaliated against him by terminating him for seeking to exercise his medical and family leave benefits in violation of ERISA and FMLA.

Following a jury trial, held March 24, 2003, the state trial court entered Final Judgment in favor of Shell and against Flood. *See* Special Interrogatories and Final Judgment, Exhibits 7 and 8, attached to Defendant's Motion for Summary Judgment; *see also* pp. 3–4, fn 1, Plaintiff's Response to Defendant's Motion for Summary Judgment (Entry # 21). Shell maintains, therefore, that the causes of action Flood asserts in his federal lawsuit are barred by the state tribunal's disposition of the claims and that further, Flood failed to present viable claims of retaliation and discrimination.[4] Flood necessarily contends that summary dismissal would prove improper because he has asserted actionable claims that avoid the *res judicata* bar and summary judgment. *See id.*

## STANDARD OF REVIEW

### *The Motion for Summary Judgment*

Summary judgment is proper if there is no genuine dispute as to any material fact

---

**3.** The state court action was filed by Flood against Commerce One, Inc., Shell Services International, Inc., Royal Dutch/Shell Oil Company, Clive Mather, John Chadwick, Rob Tarkoff and Ray Crotts, in the 190th Judicial District Court of Harris County, Texas and numbered 2001–11901. *Id.*

**4.** Shell has properly pleaded *res judicata* as an affirmative defense. *See* Defendant's Amended Answer (Entry # 13); FED. R. CIV. P. 8(c).

and the moving party is entitled to judgment as a matter of law. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); see also *Fed.R.Civ.P. 56(c)*. A factual dispute is "genuine" when a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also PYCA Industries, Inc. v. Harrison County Waste Water Management District*, 177 F.3d 351, 361 (5th Cir. 1999). The substantive law dictates which facts are material. See *Stewart v. Murphy*, 174 F.3d 530, 533 (5th Cir.), *cert. denied*, 528 U.S. 906, 120 S.Ct. 249, 145 L.Ed.2d 209 (1999); *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 189 (5th Cir. 1991). An issue is material if its resolution could affect the outcome of the action. *Anderson v. Liberty Lobby Inc.*, 477 U.S. at 248, 106 S.Ct. 2505. Facts may be gleaned from reviewing the pleadings, answers to interrogatories, admissions and affidavits on file. See *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994)(*en banc*). In deciding whether a fact issue has been created, the facts and any inferences to be drawn from them, must be viewed in the light most favorable to the nonmoving party, and questions of law are reviewed *de novo*. See *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Merritt–Campbell, Inc. v. RxP Prods. Inc.*, 164 F.3d 957, 961 (5th Cir. 1999); *Horton v. City of Houston*, 179 F.3d 188, 191 (5th Cir.1999). If the summary judgment motion is properly supported, the nonmovant may not rest on mere allegations or denials, but must set forth specific and supported material facts, of significant probative value, establishing that there exists a genuine issue of material fact. See *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir.2000); *Union Planters National Leasing Inc. v. Woods*, 687 F.2d 117, 119 (5th Cir.1982).

## DISCUSSION

### I. *Res Judicata*

### Plaintiff's Claims are Barred by the *Res Judicata* Effect of the State Court Jury's Prior Disposition of the Claims

■ Shell maintains that the claims Flood asserts in his federal lawsuit were tried and dismissed by the state court and, accordingly, entry of Judgment on its behalf and against Flood precludes the relitigation of the same claims in the federal action. See Defendant's Motion for Summary Judgment (Entry # 18) and Reply to Plaintiff's Response to Motion for Summary Judgment (Entry # 22). Shell contends that the principle of *res judicata* bars, in this instance, the federal review of those claims already determined by the state court. *Id.*

In assessing whether a federal court review is precluded by a state court determination, this court must consider whether under the laws of Texas, the cause of action tried and resolved in state court, as well as related matters that, with the use of diligence, could have been raised in the prior action, should have been litigated at that time. See *Semtek Int'l Inc. v. Lockheed Martin Corp.* 531 U.S. 497, 508–09, 121 S.Ct. 1021, 149 L.Ed.2d 32 (2001); *U.S. ex rel. Laird v. Lockheed Martin Engineering*, 336 F.3d 346, 357 (5th Cir. 2003); *Rivet v. Regions Bank of Louisiana*, 108 F.3d 576, 588 (5th Cir.1997); see *also Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 628 (Tex.1992); *Restatement (Second) of Judgments* § 24 (1980). In this way, courts may be assured that they are not adjudicating and respondents are not made to defend against "successive actions arising out of the same transaction,

asserting breach of the same duty." *Nilsen v. City of Moss Point, Miss.,* 701 F.2d 556, 563 (5th Cir.1983).

Three elements are evaluated to determine whether the previous disposition of claims precludes the raising of the same matters for disposition. The party asserting *res judicata* must demonstrate that there exists 1) a prior final judgment on the merits by a court of competent jurisdiction, 2) the same identity of the parties or those in privity with them exists between the two actions, and 3) the second action is based on the same claims as were raised or could have been raised in the first action. *U.S. ex rel. Laird v. Lockheed Martin Engineering,* 336 F.3d at 357; *Brooks v. Raymond Dugat Co. L C,* 336 F.3d 360, 362 (5th Cir.2003); *Mowbray v. Cameron County, Tex.,* 274 F.3d 269, 282 (5th Cir.2001). In the instant matter, the judgment entered by the state court is final and disposed of all claims before it. *See* Final Judgment, Exhibit 8, attached to Defendant's Motion for Summary Judgment (Entry # 18). Neither of the parties contend that the state court lacked jurisdiction over the claims asserted there or, otherwise, lacked competence to adjudicate the matters before it. The parties in the instant litigation were involved in the state court matter. *Id.* Finally, both the instant suit and the state court litigation involve the same nucleus of operative facts. *Brooks v. Raymond Dugat Co. LC,* 336 F.3d at 362; *Ellis v. Amex Life Ins. Co.,* 211 F.3d 935, 938 (5th Cir.2000).

A review of the claims asserted in the state court action and those alleged here, reveal that the claims, particularly the discrimination and retaliation claims, involve the same transactions, events and circumstances. *See* paras. 1.1,1.2.1, 6.1 and 6.2 of Plaintiff's Original Complaint (Entry # 1), commencing the federal lawsuit, and paras.

9 and 10 of the state court filing, Fourth Amended Original Complaint, Exhibit 6, attached to Defendant's Motion for Summary Judgment (Entry # 18). Although, Flood has asserted violations of federal statutes in order to invoke the Court's subject matter jurisdiction, pursuant to 28 U.S.C. § 1331, to deny that the facts giving rise to the claims asserted and resolved in the state court action are identical to those alleged in the instant case, would merely prove disingenuous. The evidence needed to establish the claims in both suits, as well as the damages sought and the motivation in bringing the suits, is essentially the same. *See e.g., U.S. ex rel. Laird v. Lockheed Martin Engineering,* 336 F.3d at 359-60. To allow Flood to relitigate those claims already raised, reviewed and resolved in a prior state action would defeat the purpose for the *res judicata* bar.

Flood maintains that he was precluded from asserting his claims premised upon alleged violations of federal statutes in the state proceeding and, accordingly, his federal lawsuit is not barred by *res judicata. See* Plaintiff's Response to Motion for Summary Judgment (Entry # 21). It is true that even in those instances in which two actions have the same operative facts, *res judicata* will not bar the action unless the instant case could or should have been brought in the earlier litigation. *See In re Intelogic Trace, Inc.,* 200 F.3d 382, 388 (5th Cir.2000); *In re Howe,* 913 F.2d 1138, 1145 (5th Cir.1990). If Flood's belief that his state law claims were preempted by ERISA and FMLA, there was, however, nothing preventing Flood from electing to have a federal tribunal resolve both the federal statutory claims and the claims arising under state law, through exercise of the federal tribunal's pendent jurisdiction.[5] It is clear that at the time of the

---

5. In the event of the federal statutes' preemption of the state law claims, had Flood

brought his "federal" claims in the state court

filing of the state court matter, Flood was aware or should have been aware of the existence of his federal claims and, because Flood could and should have brought them at that time, he is barred by *res judicata* from resurrecting the claims, already resolved by the state court, in a federal forum. It remains that the gravamen of the claims raised in Flood's state and federal filings is premised upon his allegation that he was wrongfully terminated by Shell. In both the state and federal proceedings, Flood contends he was fired because of his employer's alleged discrimination against him and in retaliation for seeking benefits allowed Shell employees. A jury has already determined in the state court proceeding that Flood was not wrongfully terminated by Shell as a consequence of discrimination nor in retaliation for seeking employer provided benefits. *See* Special Interrogatories Nos. 1, 2 and 4, Exhibit 7, attached to Defendant's Motion for Summary Judgment (Entry # 18). Flood's bifurcation of his claims amongst the tribunals, based purely upon whether the employer sponsored benefits allegedly disallowed or interfered with were provided by state or federal law, cannot be allowed to circumvent the jury's findings against Flood. *See Hogue v. Royse City, Tex.,* 939 F.2d 1249, 1252 (5th Cir.1991). The state court's disposition of Flood's claims must be allowed *res judicata* effect

and, consequently, summary judgment is proper as any further pursuit of his allegations in the instant matter is barred by the prior findings.

## II. The Discrimination Claim

### Plaintiff has Failed to Establish A *Prima Facie* Case of Discrimination in Violation of ERISA

If Flood's claims were not barred by *res judicata,* he would be unable to prevail with respect to his allegation that Shell discriminated against him in violation of ERISA, by terminating him because he exercised his statutory entitlement to health care benefits. *See* Plaintiff's Original Complaint (Entry # 1), para. 6.1. In order to establish a *prima facie* case of discrimination under ERISA, Flood must establish that Shell fired him from a position for which he was qualified in retaliation for exercising an ERISA right, or to prevent attainment of benefits to which he would have become entitled under an employee benefit plan.[6] *Holtzclaw v. DSC Communications Corp.,* 255 F.3d 254 (5th Cir.2001); *Rogers v. Int'l Marine Terminals, Inc.,* 87 F.3d 755, 761 (5th Cir.1996). Section 1140 of ERISA, forbids an employer from interfering with benefits secured by the Act. *Id.* Flood is allowed to make a showing of ERISA discrimination with circumstantial evidence. *See id.*

---

matter, removal would have allowed the deliberation of the claims. See *e.g., Haynes v. Prudential Health Care,* 313 F.3d 330, 334, *reh. denied* 57 Fed.Appx. 213, 2003 WL 151176 (5th Cir.2002). In this instance, however, it appears that the state laws involved have merely a "tenuous, remote, or peripheal connection" to the employee welfare benefits plans provided by the federal statutes at issue, here and, accordingly, preemption would not have been an issue. See *New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 661, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995); *Lewis v. Bank of America N.A.,* 343 F.3d 540, 543–45 (5th Cir. 2003).

**6.** Establishing the *prima facie* case constitutes the first step of the triparite burden shifting framework advanced in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), in which Flood must first establish a *prima facie case,* then the burden shifts to Shell to articulate a legitimate, non-discriminatory reason for his termination; and, if successful, the burden shifts back to Flood to establish by sufficient evidence that the articulated reason was merely a pretext for unlawful discrimination and retaliation. See *Fabela v. Socorro Indep. Sch. Dist.,* 329 F.3d at 415; *McInnis v. Alamo Community College Dist.,* 207 F.3d 276, 279–80 (5th Cir.2000).

Flood must establish that he suffered a loss of ERISA benefits and that the loss was more than an incidental consequence of his discharge. *See id.; Stafford v. True Temper Sports,* 123 F.3d 291, 295 (5th Cir.1997)(*per curiam*). Flood is unable to establish that Shell prevented or sought to interfere with ERISA provided benefits. Flood has presented no evidence demonstrating that Shell disallowed or sought to interfere with his health care benefits. *See* Flood deposition at pp. 37–39, Exhibit 1, attached to Defendant's Motion for Summary Judgment (Entry # 19). Flood indicates that not only was there no interference by Shell with his medical benefits, he was offered extended health care benefits following his termination. *See id.* at p. 38. Furthermore, the evidence reflects that Shell's queries about his medical condition, was merely an attempt to assess his ability to travel and perform his duties not to harass or interfere with his benefits. *See* Exhibits 2, 4, 8, attached to Plaintiff's Response to Defendant's Motion for Summary Judgment (Entry # 21). In fact, Flood admits that any interference with medical treatment by his employer, was not with his own medical care, but contends that Shell interfered with his mother's medical treatment by not accommodating his wish to visit his mother during her illness. *Id.* at p. 23. There has been no showing, however, that Shell owed ERISA entitled benefits to Flood's mother.

During his deposition, it appears that Flood may be attempting to additionally assert that as a consequence of his termination, he was unable to secure a retirement pension. *See id.* at pp. 25–26. There has not, however, been presented any evidence indicating that Shell terminated Flood in an effort to avoid paying or interfere with his receipt of a pension; and, without proof of such *animus,* the loss of Flood's pension was merely an incident of his termination. Flood would,

therefore, be unable to defeat summary dismissal of his claim of ERISA discrimination, as he has not made a *prima facie* showing that Shell terminated his employment in order to prevent his receipt of benefits owed through an employee benefit plan.

## III. The Retaliation Claim
### Plaintiff has Failed to Establish a *Prima Facie* Case of Retaliation under the FMLA

■ Title VII makes it unlawful for an employer to retaliate against an employee for opposing an unlawful employment practice. *See 42 U.S.C. § 2000e–3(a);* see also *Mato v. Baldauf,* 267 F.3d 444, 450 *reh. denied* 277 F.3d 1375 (5th Cir.2001), *cert. denied* 536 U.S. 922, 122 S.Ct. 2587, 153 L.Ed.2d 777 (2002). It is undisputed that Flood was allowed unpaid leave of absence to assist an ill family member as a result of Shell's FMLA policy. *See* Employee Fact Sheet, Exhibit 4, attachment II, attached to Plaintiff's Response to Motion for Summary Judgment (Entry # 21). Flood maintains that Shell terminated him in retaliation for exercising his right to FMLA leave to attend to his sick mother. *See* para. 6.2, Plaintiff's Original Complaint (Entry # 1). In order for Flood to prevail on his retaliation claim, he must establish that he engaged in activity protected by the FMLA, that Shell took an adverse employment action against him, and that a causal connection exists between the protected activity and the adverse action. *Id.; Fabela v. Socorro Indep. Sch. Dist.,* 329 F.3d 409, 414 (5th Cir.2003); *Holtzclaw v. DSC Communications Corp.,* 255 F.3d at 259. Shell's termination of Flood's employment is an adverse consequence of participating in protected activity. See *Walker v. Thompson,* 214 F.3d 615, 628–29 (5th Cir.2000); *Mattern v. Eastman Kodak Co.,* 104 F.3d 702, 707 (5th Cir.1997). Flood, however, has failed to establish that

he sought a leave or absence or a causal *nexus* between his claimed protected activity and Shell's termination of his employment.

Flood was never refused by Shell an opportunity to visit his mother. *See* Flood deposition at p. 17, Exhibit 1, attached to Defendant's Motion for Summary Judgment (Entry # 18). Furthermore, Flood never submitted a request for a leave of absence provided by FMLA. *See id.* at pp. 17, 23–24. Shell provided Flood the information necessary to seek an FMLA leave of absence. See *id.;* Exhibit 4, p. 1; Smith deposition at pp. 24–25, 35, Exhibit 4. Flood has, therefore, failed to establish that he participated in activity protected by Title VII or FMLA.

At most, Flood indicates that Shell's Human Resource consultant, Deidra Smith, related to him that Shell would not likely postpone a disciplinary hearing to allow Flood an FMLA leave of absence. *See* Plaintiff's Response to Motion for Summary Judgment (Entry # 21). Even if Flood's post-suspension indication that he *may* seek an FMLA leave of absence constituted a request for FMLA accommodation, which it does not; Smith's surmise as to Shell's reaction to such a request, is not sufficient to establish the *causal* nexus between Flood's seeking the leave of absence and his termination. Smith was not a decision maker involved in Flood's termination and, accordingly, her statements and actions are not imputable upon the decision to terminate. *See Gee v. Principi,* 289 F.3d 342, 346 (5th Cir.2002); *Rios v. Rossotti,* 252 F.3d 375, 382 (5th Cir. 2001). Additionally, Flood has not established that Kramm and Dooley, the individuals involved in his termination, were even aware he would seek a leave of absence. *See* Dooley deposition at p. 98, Exhibit 3; Kramm deposition at pp. 11, 55, 85, Exhibit 2, attached to Defendant's Motion for Summary Judgment (Entry # 18).

Flood, therefore, has not demonstrated that there existed a *causal* link between the protected activity and Shell's termination of his employment.

Even if Flood were able to establish *prima facie* cases of discrimination and retaliation, he has not produced evidence of pretext sufficient to refute Shell's rebuttal of his claims, which the employer has done by providing a legitimate, non-discriminatory reason for terminating Flood. *See St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 525, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Haynes v. Pennzoil Co.,* 207 F.3d 296, 300 (5th Cir.2000). Shell maintains that its reason for terminating Flood was because the reason he provided for needing to return on assignment to Europe, was false. *See* Dooley deposition at p. 98, Exhibit 3; Kramm deposition at pp. 11, 55, 85, Exhibit 2, attached to Defendant's Motion for Summary Judgment (Entry # 18). Flood contends, however, that Shell's articulated reason for firing Flood, is merely a pretext. *See* Plaintiff's Response to Defendant's Motion for summary Judgment (Entry # 21). Flood contends that Shell's European office did request his return and offers the deposition testimony and e-mails from Shell employees in that office to support his contention. *See id.* at p. 14. A review of the e-mails and the deposition testimony, however, reveals that, at most, there was a discussion between the European employees and Flood as to whether his services would be required, but there was no authorization given by them for him to seek a return visit. *See* Exhibits 1, 9; Deposition testimony of Alistair Rae, pp. 21, 25, 27, 32, 34 at Exhibit C; Deposition testimony of Han Kooy, p. 12, Exhibit D, attached to Plaintiff's Response to Motion for Summary Judgment (Entry # 21). Flood has, therefore, failed to establish by sufficient evidence that Shell's articulated reason for its action was merely a pretext for unlawful discrimination or retaliation.

## CONCLUSION

The preclusion of Flood's claims because of the *res judicata* effect of the jury verdict rendered in the state court action as well as Flood's failure to demonstrate *prima facie* cases of discrimination or retaliation, do not present genuine issues as to material facts allowing a resolution by a trial of this matter. Flood's claims of discrimination and retaliation as a consequence of ERISA and FMLA violations must, therefore, be summarily dismissed. *See Haas v. ADVO Systems, Inc.,* 168 F.3d 732, 733 (5th Cir.1999); see also *Chaney v. New Orleans Public Facility Management,* 179 F.3d at 167. It is, therefore,

**ORDERED** that Shell Services International, Inc.'s Motion for Summary Judgment (Entry # 18) is **GRANTED.** Further, it is

**ORDERED** that this matter is **DISMISSED with prejudice** from the dockets of this Court.

The Clerk of Court shall file this Memorandum and Order and provide the parties with a true copy.