# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
March 20, 2013

Lyle W. Cayce
Clerk

No. 12-60549
Summary Calendar

HUBERT MILLER,

Plaintiff-Appellant,

v.

METRO FORD AUTOMOBILE SALES, INCORPORATED,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 1:11-CV-14

Before WIENER, ELROD and GRAVES, Circuit Judges.

PER CURIAM:[*]

Appellant Hubert Miller appeals the district court's grant of summary judgment in favor of his former employer, Metro Ford Automobile Sales, Inc., on Miller's claims that Metro Ford retaliated against him in violation of the Age Discrimination in Employment Act of 1967 ("ADEA") and the Fair Labor Standards Act (the "FLSA"). We AFFIRM.

Miller was employed by Metro Ford as a car salesman from August 2008 until his termination on April 26, 2010. Shortly before Metro Ford fired him, one

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

of his co-workers entered into a consignment agreement with Metro Ford whereby Metro Ford agreed to attempt to sell the co-worker's vehicle. Under the terms of the consignment agreement, if the vehicle was sold, Metro Ford would retain all proceeds exceeding $7,800.00. Shortly after Metro Ford and the co-worker entered into this consignment agreement, Miller and the co-worker sold the vehicle to customers of Metro Ford. Miller received a fee for his assistance with the sale and the co-worker received the balance of the sale proceeds. Metro Ford did not receive any proceeds and was not notified of the sale. Subsequently, Metro Ford learned of the sale of the vehicle in violation of the consignment agreement and promptly terminated Miller. Miller's co-worker resigned.

On January 14, 2011, Miller filed a complaint in the United States District Court for the Northern District of Mississippi, alleging that he was terminated in retaliation for his complaints to his supervisors that Metro Ford engaged in age discrimination and failed to properly compensate him for overtime.[1] After discovery, the district court granted summary judgment in favor of Metro Ford.

"We review a district court's grant of summary judgment de novo, applying the same standards as the district court." *Kujanek v. Houston Poly Bag I, Ltd.*, 658 F.3d 483 (5th Cir. 2011) (citation omitted). Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (quoting Fed. R. Civ. P. 56(c)). In determining if there is a genuine issue of material fact, "we review the evidence in the light most favorable to the nonmoving party." *Id.* (citation omitted).

---

[1] Miller also alleged an age-discrimination claim against Metro Ford. The district court granted summary judgment in favor of Metro Ford on Miller's age-discrimination claim and Miller has not challenged that judgment on appeal. Accordingly, he has waived any possible appeal to the disposition of his age-discrimination claim. *See, e.g.*, *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994) ("An appellant abandons all issues not raised and argued in its *initial* brief on appeal.").

Miller claims that his termination constituted retaliation in violation of both the ADEA and FLSA. The ADEA and FLSA prohibit employers from discriminating against any employee for filing complaints, participating in investigations or other proceedings, or otherwise opposing any practice made unlawful by these statutes. *See* 29 U.S.C. § 623(d); 29 U.S.C. § 215(a)(3). To establish a prima facie case of retaliation under either the ADEA or FLSA, Miller is required to show: (1) that he was engaged in an activity protected by the ADEA or FLSA; (2) that an adverse employment action occurred; and (3) that a causal link existed between the protected activity and the adverse employment action. *See Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617, 624 (5th Cir. 2008) (describing the prima facie elements for a FLSA claim); *Holtzclaw v. DSC Commc'ns Corp.*, 255 F.3d 254, 259 (5th Cir. 2001) (describing the prima facie elements for an ADEA claim). If Miller establishes a prima facie case, Metro Ford must then articulate a legitimate, non-discriminatory reason for its decision to take the adverse employment action. *Hagan*, 529 F.3d at 624 (citation omitted). The burden then shifts to Miller to demonstrate that the reason articulated by Metro Ford is a pretext for retaliation. *Id.*

The district court concluded that Miller was unable to establish a prima facie case of retaliation under either the ADEA or FLSA because Miller (1) failed to demonstrate that he engaged in protected activity, and (2) even if his general work related complaints constituted protected activity, no causal link existed between that activity and Miller's termination. The district court also concluded that even if Miller could establish a prima facie case of retaliation under the ADEA or FLSA, Miller failed to demonstrate that Metro Ford's stated nondiscriminatory reason for Miller's termination—namely, Miller's participation in the sale of his co-worker's vehicle in violation of the consignment agreement—was pretext for retaliation.

We need not address whether Miller has satisfied the prima facie case for retaliation under the ADEA or FLSA because we agree with the district court

that Metro Ford produced a legitimate, non-retaliatory reason for Miller's termination, and Miller has not presented sufficient evidence to establish a material issue of fact as to whether Metro Ford's explanation is pretextual. Metro Ford contends that Miller's termination resulted from Miller's involvement in the sale of a co-worker's vehicle to Metro Ford customers in violation of the consignment agreement his co-worker entered into with Metro Ford. In support of this contention, Metro Ford offered the affidavit of a customer involved in the purchase of the vehicle from Miller who explained that Miller, purporting to act on behalf of Metro Ford, initiated the sale of the vehicle. Metro Ford also offered the testimony of Metro Ford's general manager who discovered the sale of the vehicle and discussed the sale with Miller and his co-worker. The general manager testified that Miller's co-worker admitted that he agreed with Miller's suggestion to bypass Metro Ford when selling the consigned vehicle in order to make more money. Based on this evidence, Metro Ford has satisfied its burden of producing a legitimate, non-retaliatory reason for Miller's termination.

To establish pretext, Miller contends that he was unaware of the consignment agreement between his co-worker and Metro Ford, and more generally, was unaware that Metro Ford ever entered into consignment agreements.[2] Miller does not dispute, however, that he received a payment from his co-worker for his involvement in the sale of the consigned vehicle. Even if Miller was completely unaware of the consignment agreement and innocently participated in the sale of the consigned vehicle, Miller's innocent state of mind is insufficient to demonstrate pretext. Importantly, even if Metro Ford mistakenly assumed that Miller intentionally violated company policy by

---

[2] He also contends that the consignment agreement probably did not exist at the time he was terminated but was created later to justify his termination. This speculation regarding Metro Ford's alleged discriminatory intent is insufficient to establish pretext. *See, e.g.*, *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 487 (5th Cir. 2008).

violating the consignment agreement, that mistake is insufficient to demonstrate that Metro Ford's stated rationale for terminating him was mere pretext for retaliation. *See, e.g.*, *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 379 (5th Cir. 2010) (explaining that a plaintiff's assertion of innocence relating to the stated reason for termination does not create a factual issue as to the falsity of that reason because the issue is not the truth or falsity of the plaintiff's wrongdoing, but rather is whether the employer believed the plaintiff was at fault and acted upon that belief in good faith).

Miller also vaguely asserts that the temporal proximity between his termination and alleged complaints to his supervisors approximately a month earlier establish pretext. Our precedent makes it clear, however, that "temporal proximity alone is insufficient" to prove that the adverse employment action would not have occurred but for the protected activity. *See Strong v. Univ. Heathcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007). Accordingly, the mere temporal proximity of Miller's alleged complaints to his termination, without more, fails to establish pretext. Because Metro Ford satisfied its burden of producing a legitimate, non-retaliatory reason for Miller's termination and Miller has not presented sufficient evidence to establish a material issue of fact as to whether Metro Ford's explanation is pretextual, Miller's retaliation claims fail as a matter of law.

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment in favor of Metro Ford.